
JUDGE STEIN

**10 CV 3806**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Ronald D. Coleman (RC 3875)
**GOETZ FITZPATRICK LLP**
One Penn Plaza—Suite 4401
New York, NY 10119
rcoleman@goetzfitz.com
*Attorneys for Plaintiff*
*University Communications, Inc.*


RECEIVED MAY 10 2010 U.S.D.C. S.D.N.Y. CASHIERS

| | |
|---|---|
| UNIVERSITY COMMUNICATIONS, INC., a New Jersey corporation doing business as FORTRESS ITX,<br><br>Plaintiff,<br><br>- vs. –<br><br>CAPITAL MARKET SERVICES LLC, a New York limited liability company, and VISUAL TRADING SYSTEMS, LLC, a New York limited liability company,<br><br>Defendants. | CIVIL ACTION NO. _____<br><br>**COMPLAINT** |

Plaintiff University Communications, Inc., doing business as Fortress ITX ("Fortress"), by its undersigned attorneys, by and for its complaint against the defendants Capital Market Services, LLC ("CMS") and Visual Trading Systems, LLC ("VTS"), complains and says as follows:

### THE PARTIES

1. Fortress is a corporation formed pursuant to the laws of the State of New Jersey with its principal place of business at 100 Delawanna Avenue, Clifton, New

Jersey.

2. Defendant VTS is a limited liability company formed pursuant to the laws of the State of New York with its principal place of business at 350 Fifth Avenue, Suite 6420, New York, New York.

3. Defendant CMS is a limited liability company of the State formed pursuant to the laws of the State of New York with its principal place of business at 350 Fifth Avenue, Suite 6400, New York, New York.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this court under 28 U.S.C. § 1332 in that plaintiff is incorporated, resides, or operates its principal place of business in the State of New Jersey, which is a state other than the state in which defendants are formed, reside, or operate their principal place of business, which is the State of New York; the contract giving rise to this claim provides for that this District be the forum for any disputes arising thereunder; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the facts giving rise to the acts or omissions alleged herein took place in this District, because defendants are New York limited liability companies whose principal place of business of business is within this District, and because the subject contract provides for venue in this District.

## FACTS

1. Fortress provides Internet infrastructure outsourcing resources to business enterprises. Fortress operates a data center, sometimes called a server farm. This is a

facility housing computer systems, particularly computer servers on which its business customers' Internet operations "reside."

2. As an industry-standard data center, the Fortress data center is comprised of specially designed space and shelving or "racks" for computer servers, as well high-level "connectivity" (connections to the Internet of varying types and specifications). Colocation customers also receive the benefit of other adjunct resources and facilities at a colocation center such as storage and backup systems, redundant and backup power supplies, redundant data communications connections, environmental controls (e.g., air conditioning and fire suppression) and security devices.

3. Among the services provided by Fortress at its data center is "colocation." Multiple colocation customers rent space and resources at the Fortress data center (hence the term "co-location"), where they maintain and operate their network, server and storage gear and connect to the Internet. By utilizing colocation enterprises impose minimal cost and complexity on their own operations and benefit from services and resources purchased and provided in bulk and at the highest level of technical expertise for multiple customers.

4. Fortress's clients have seven-day-a-week, 24-hour-a-day access to servers located at Fortress's data center. This access is available both virtually, i.e., via Internet connections, and physically. Utilizing colocation, Fortress's clients are able to manage, maintain, back up and in all respects operate their Internet and other server-based business operations utilizing industry-standard technical capacity and benefiting from Fortress's substantial investment in infrastructure, physical space and technical expertise.

5. VTS provides information technology ("IT") services to the foreign

exchange market ("forex") industry, a worldwide decentralized over-the-counter financial market for the trading of foreign currencies.

6. VTS and CMS are located at the same address.

7. The management of the building where defendants maintain their offices, the Empire State Building, has represented to plaintiff's process server that it has no listing of or record of defendant VTS, which nonetheless holds itself out as being located at that address.

8. VTS and CMS are in the same business, namely forex trading.

9. VTS is a division or operating unit of CMS.

10. VTS is an alter-ego of defendant CMS ("VTS / CMS").

11. On or about November 16, 2006, VTS / CMS entered into a contract with Fortress for substantial space and collocation services.

12. The contractual term for the provision of these services was 36 months at the base price of $31,250 in addition to certain contractually-specified increases.

13. The contract also provided that for automatically renewal for an unlimited number of one year terms at the same price formula unless 45 days' notice was provided by the terminating party prior to the contract's effective date.

14. The 36-month term under the original contract ended on January 1, 2010.

15. Neither party gave notice of termination 45 days prior to the expiration of the original term.

16. Pursuant to the contract between Fortress and VTS / CMS, its terms automatically renewed for a term of one year ending on January 1, 2011.

17. VTS / CMS remained in Fortress's data center past the deadline to give

4

notice of termination of the original contract term, utilized the full scope of services provided under the contract and benefited from a pricing structure premised on the automatic renewal of the contract provided by its terms.

18. Unbeknownst to Fortress, however, VTS / CMS actually began to remove its equipment from Fortress's facility and move it to another data center surreptitiously in two steps, one of which took place on Christmas Eve and the second of which took place on New Year's Eve. In both cases, only a skeleton staff was on duty at the Fortress data center, and each late-night exploit took place during a period of extended vacations and long weekends when changes would not readily be noticed.

19. VTS / CMS acted surreptitiously in order to benefit from the pricing in its contract with Fortress premised on a minimum year-long commitment, whereas VTS / CMS has no intention to honor its contractual obligation to comply with those terms.

20. VTS / CMS also knew that if it informed Fortress of its plans, Fortress would likely require that all accounts between the companies be squared away and that payment be made in advance for any period during which VTS / CMS intended to utilize the data center and the services to be provided by Fortress.

21. Instead, VTS / CMS misled Fortress and misrepresented its plans to Fortress, leading Fortress to rely on the stream of continued regular payments from VTS / CMS over the course of that year and its physical control over VTS / CMS's equipment as assurance for such payments, and not to require security for the final periods during which VTS / CMS utilized the data center.

## CLAIM FOR RELIEF

### (Breach of Contract)

22. Fortress hereby incorporates by reference the allegations set forth above.

23. Fortress has performed all its obligations pursuant to the contract between it and VTS / CMS.

24. The foregoing conduct by VTS / CMS constitutes a breach of contract.

25. Fortress has been damaged by VTS / CMS's breach of contract in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for an order of the Court:

A. Awarding compensatory damages in an amount to be determined at trial, but in no event less than $375,000 plus attorneys' fees as provided in the contract; and

B. Awarding plaintiff such other and further relief as the Court may deem just and proper.

_____
Ronald D. Coleman (RC-3875)

**GOETZ FITZPATRICK LLP**
One Penn Plaza—Suite 4401
New York, NY  10119
rcoleman@goetzfitz.com
*Attorneys for Plaintiff*
*University Communications, Inc.*

Dated: May 6, 2010