UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

UNIVERSITY COMMUNICATIONS, INC.,

    d/b/a FORTRESS ITX,

        Plaintiff,                       No. 10-CV-3806 (NRB)
                                                ECF Case

    against

CAPITAL MARKET SERVICES LLC

and

VISUAL TRADING SYSTEMS, LLC,

        Defendants.
----------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

Daniel J. Rothstein (DR 5440)
Attorney for Defendants
Law Office of Daniel J. Rothstein, P.C.
747 Third Avenue, 32nd Floor
New York, NY 10017
tel. 212-207-8700
fax 212-207-8710
djr@danielrothstein.com

# TABLE OF CONTENTS

Preliminary Statement 1

Background 1

I. The complaint should be dismissed because
the contract's automatic renewal clause is unenforceable. 2

    A. Plaintiff was required to provide a written reminder
of the renewal, because the contract is for "service
… to or for … personal property" under GOL 5-903. 3

    B. Plaintiff was required to provide a written reminder
of the renewal, because the contract is also a "lease of
real property or premises" under GOL 5-905. 5

    C. GOL 5-903 and 5-905 apply to all kinds of contracting parties. 7

    D. Defendants were free to opt out of the contract at any time
upon expiration of the initial term. 8

    E. The complaint should be dismissed under GOL 5-903
and 5-905 now, at the pleading stage. 9

II. The complaint should be dismissed for relying on
an invalid contractual penalty clause. 9

III. The complaint should be dismissed for repeated failure
to properly allege subject-matter jurisdiction. 12

Conclusion 14

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

Defendants hereby move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint with prejudice for failure to state a claim upon which relief can be granted.

**PRELIMINARY STATEMENT**

This is an action for breach of an assertedly self-renewing contract for storage of defendants' computer equipment at plaintiff's premises and for internet and other related services. Defendants repudiated the contract at the end of the initial term. Plaintiff seeks accelerated contractual payments for the entire renewal term, regardless of whether and to what extent plaintiff tried or succeeded in finding a customer to replace defendants.

The complaint must be dismissed because (1) plaintiff failed to provide a formal written reminder of the impending contract renewal as statutorily required, (2) the acceleration clause is an invalid contractual penalty, and (3) plaintiff has failed to correct pleading defects after the dismissal of its prior, essentially identical action.

**BACKGROUND**

Plaintiff, a New Jersey corporation doing business under the name Fortress ITX, alleges that it had a 36-month service contract with defendants, which are two affiliated limited-liability companies based in New York and engaged in the foreign exchange trading business. The services included the right to use plaintiff's "infrastructure outsourcing resources," including a data center (also known as a "server farm"), where defendants' computer servers and related equipment would "reside." (Cplt. ¶¶ 1, 11-12) Plaintiff further alleges that under an arrangement called "collocation," customers "rent space and resources" at plaintiff's server farm, "where they maintain and operate their network" and "benefit from services and resources

purchased and provided in bulk" by plaintiff, including "storage and backup systems, environmental controls (e.g., air conditioning and fire suppression) and security devices." (Cplt. ¶¶ 2-3)

According to plaintiff, the contract provided that after the initial term ended on January 1, 2010, there would be automatic renewals "for an unlimited number of one year terms" unless either party terminated 45 days before the new period. (Cplt. ¶¶ 13-14) Plaintiff alleges that because "[n]either party gave notice of termination 45 days prior to the expiration of the original term," and because defendants removed their equipment at the end of the original term and renounced the contract, plaintiff has suffered damages of at least $375,000. (Cplt. ¶¶ 15, 18, "Wherefore" clause A) This amount equals one year of payments at the alleged monthly "base price of $31,250." (Cplt. ¶ 12)

The contract is governed by New York law. (Master Service Agreement, Art. 7.1) (The contract documents – Master Service Agreement, Collocation Services Addendum, Internet Services Addendum, and Service Order – are submitted as attachments nos. 1-4 to the affirmation supporting the motion.)[1]

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE CONTRACT'S AUTOMATIC RENEWAL CLAUSE IS UNENFORCEABLE.

The automatic contract-renewal clause that plaintiff relies on is unenforceable under New York's General Obligations Law, Article 5, Sections 903 and 905. Sections 903 and 905 both provide that an automatic contract-renewal clause is unenforceable unless the customer is given a

---

[1] Because it is an integral part of the complaint, the contract is a proper part of the record for a motion under Rule 12(b)(6). Broder v. Cablevision Systems Corp., 418 F.3d 187, 196 (2d Cir. 2005).

formal written reminder of the upcoming renewal between fifteen and thirty days before the deadline for opting out of the renewal period. Section 903 applies to a contract for "service, repair or maintenance to or for any real or personal property." Section 905 applies to a "lease of any real property or premises." The two statutes, together with a third sibling (GOL 5-901, governing personal property leases), share a common purpose, legislative history, and notice requirements.[2]

Plaintiff does not assert that it provided a written reminder of the impending renewal of the contract. On the contrary, as related above, neither side gave notice in connection with the termination of the original contract term. (Cplt. ¶ 15) Therefore, the automatic-renewal clause is unenforceable if the contract is governed by either Section 903 or Section 905, i.e., if the contract is either for "service, repair or maintenance to or for personal property" (Section 903) or for "lease of any real property or premises" (Section 905). As discussed below, both statutes apply.

### A. Plaintiff was required to provide a written reminder of the renewal, because the contract is for "service … to or for … personal property" under GOL 5-903.

The contract in this case is for the kind of services referred to in Section 903, i.e., "service, repair or maintenance to or for personal property."[3] The relevant personal property is

---

[2] Section 901 (on personal property leases) was enacted in 1953. Section 903 (on "contracts for service, maintenance or repair to or for personal property") was enacted in 1961. Section 905 (on leases of "real estate or premises") was enacted in 1934. (See Legislative History Appendix submitted with motion.)

[3] Section 903 provides:

1. As used in this section, "person" means an individual, firm, company, partnership or corporation.
2. No provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract service, maintenance or repair of his

3

described in the complaint as defendant's "network, server and storage gear" and "equipment." (Cplt. ¶¶ 3, 18) In several places, the complaint describes the contract as one for "services" related to this property, including, as mentioned earlier, "resources purchased and provided" by plaintiff: "storage and backup systems, environmental controls (e.g., air conditioning and fire suppression) and security devices." (Cplt. ¶¶ 3, 5, 11-12, 17, 20) Thus, plaintiff's services are within the terms of Section 903.

Because Section 903 refers to "services, maintenance <u>or</u> repair" (emphasis added), a contract for services to or for personal property is governed by Section 903 even if the services are not related to maintenance or to repair. Telephone Secretarial Service v. Sherman, 284 N.Y.S.2d 384 (2d Dep't 1967). The service at issue in Sherman was remote telephone answering, i.e., recording and receiving messages that came through a doctor's telephones. The court observed that it could not "detect a promise, express or implied, burdening plaintiff with the maintenance or repair of real or personal property." Nevertheless, the court applied Section 903: "plaintiff's answering of defendant's telephone was a 'service * * * to or for * * * personal property.'" 284 N.Y.S.2d at 385 (quoting Section 903; ellipses in original)

Similarly, in Carbo Industries, Inc. v. Coastal Refining & Marketing, Inc., 2005 WL 6126724 (E.D.N.Y.), which involved a contract for petroleum storage and related services, the

---

> intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service maintenance or repair, unless the person furnishing the service, maintenance or repair, at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.
> 3. Nothing herein contained shall be construed to apply to a contract in which the automatic renewal period is one month or less.

service provider argued that because it did not "maintain or repair" the customer's petroleum, Section 903 did not apply. Id. at *2. The court rejected the argument. "New York state and federal courts have broadly interpreted Section 5-903 to apply to a wide range of service contracts," and have taken an "expansive approach to Section 5-903." Id. at **2, 3. In a reasoned affirmance, the Second Circuit adopted the district court's conclusion on this point as well as Sherman's directive that "the words 'service, maintenance or repair to or for any real or personal property' are to be generously read in order that their scope will engage the variegated evil the statute was intended to meet." 154 Fed. Appx. 218, 219-20, 2005 WL 3019245, *2 (quoting Sherman, 284 N.Y.S.2d at 385-86).

Under these precedents, the contract in this case was for "services" within the meaning of Section 903. Thus, plaintiff was required to give defendants written notice of the upcoming contract renewal. Because plaintiff did not provide such notice, the automatic contract-renewal clause is unenforceable, and the complaint should be dismissed.

**B. Plaintiff was required to provide a written reminder of the renewal, because the contract is also a "lease of … real property or premises" under GOL 5-905.**

Section 905 provides:

> No provision of a lease of any real property or premises which states that the term thereof shall be deemed renewed for a specified additional period of time unless the tenant gives notice to the lessor of his intention to quit the premises at the expiration of such term shall be operative unless the lessor, at least fifteen days and not more than thirty days previous to the time specified for the furnishing of such notice to him, shall give to the tenant written notice, served personally or by registered or certified mail, calling the attention of the tenant to the existence of such provision in the lease.

The complaint alleges (i) that under collocation, customers such as defendants "rent space" (Cplt. ¶ 3), and (ii) that defendants had a contract "for substantial space." (Cplt. ¶ 11) The contract also calls itself a lease: "FORTRESS ITX agrees to lease to Customer, and

5

Customer agrees to lease from FORTRESS ITX" one or more collocation bays. (Collocation Services Addendum, Art. 1) (emphasis added)   Similarly, the provision restricting assignment of the customer's right to its space is entitled "Assignment/Sublease."  (Id., Art. 20) (emphasis added)   On the other hand, as plaintiff will emphasize, the same document states that the contract "is a services agreement and is not intended to and will not constitute a lease of any real . . . property."  (Id., Art. 19(a))

The precedents interpreting Sections 901 and 903 require that their sibling Section 905 be construed broadly to benefit customers.  As discussed above (Section I.A), the Second Circuit endorsed Sherman's directive to interpret Section 903 "generously." Similarly, before Section 903 (governing services) was enacted in 1961, Section 901 (governing personal property leases) was interpreted broadly to cover agreements on the borderline between personal property leases and services.  In Peerless Towel Supply, Inc. v. Triton Press, Inc., 160 N.Y.S.2d 163 (1st Dep't 1957), the court applied Section 901 to release a customer from an automatically renewed linen service agreement.  The court rejected the provider's argument that the agreement was a "service" contract (and thus not subject to Section 901) rather than a "lease" governed by Section 901.  Besides finding an element of "specific property capable of identification" (a cabinet and weekly exchanged towels), id. at 164, the court offered a broader reason for applying the statute:

> The statute, sec. 399 [as Section 901 was then codified], being of a remedial nature, should be given a construction broad enough to cover this arrangement. . . .  [N]ice distinctions as to whether this is a 'service' should not derogate from the fact that there was sufficient in the nature of the arrangement and the words of the agreement to bring these cases within the scope of sec. 399.  Id. at 165.[4]

---

[4] Section 903 was enacted in order to extend the notice requirements to borderline cases like Peerless and to end disputes as to whether they were covered by Section 901. *See* Memorandum of Law Revision Commission Staff, March 23, 1961, p. 2, Legislative History Appendix to this motion (pointing out "uncertainty which exists in this area" in light of Peerless).

The contract in this case uses the word "lease," and the complaint's description of the contract uses the term "rent" of "space." Furthermore, like the customer in Peerless, defendants here were allocated specific property: "Customer shall allow FORTRESS ITX access to <u>the Customer Premises</u> to the extent reasonably determined by FORTRESS ITX for the installation, inspection and scheduled or emergency maintenance of the facilities related to the service." (Collocation Services Addendum, Art. 3) (emphasis added) For these reasons, and because the ambiguity (caused by provisions that there is no lease) should be interpreted generously in defendants' favor, the contract is a "lease" of "premises" under GOL 5-905. Therefore, the automatic renewal clause is unenforceable, and the complaint should be dismissed.

### C. GOL 5-903 and 5-905 apply to all kinds of contracting parties.

Sections 903 and 905 apply to all parties, whether they are large businesses, small businesses, or consumers. In Harris v. Adams & Co., 310 N.Y.S.2d 258 (N.Y. Cty. Civil Ct. 1970), which invalidated the automatic renewal of a contract between the owner of a fourteen-story building and an individual who provided property management services, the court emphasized that Section 903 "does not talk in terms of a party furnishing services, maintenance or repair to a large or small owner, consumer, or contracting party." Id. at 262. The court drew an analogy to Section 905, "which served as the model" for Section 903:

> Sec. 5-905 does not define or distinguish between large or small landlords or large or small tenants. It applies to leases for real property containing automatic renewal clauses. If either Sec. 5-903 or Sec. 5-905 were intended to make other distinctions than those expressly set forth in the statutes themselves, this will be the province of the legislature – not the judiciary. Id. at 263.

Similarly, the lower court in Sherman pointed out that Section 903 aims to protect "all" businesses. 268 N.Y.S.2d 453, 454 (Nassau Cty. Dist. Ct. 1966) (quoting legislative history materials of GOL 5-901, "from which [Section 903] is derived"); *see also* Peerless, 160

7

N.Y.S.2d at 165 (discussing Section 901 legislative history materials). Therefore, any suggestion by plaintiff that Sections 903 and 905 were intended to benefit only small businesses or individual consumers, or that the relative size of the contracting parties should control, must be rejected.

**D. Defendants were free to opt out of the contract at any time upon expiration of the initial term.**

The complaint emphasizes that defendants left plaintiff's premises "surreptitiously" at the end of the initial contract period. (Cplt. ¶ 18) However, plaintiff does not allege any injury from defendants' manner of departure, such as amounts due from the initial contract period or damage to the premises.

New York courts have consistently released customers from automatically renewed contracts even when the customers have repudiated the contract well into a new contract period. *See* Peerless, 160 N.Y.S.2d at 164 (personal property lease terminated three months into renewal period); Sherman, 284 N.Y.S.2d at 385 (service agreement terminated two months into renewal period); Protection Industries Corp. v. DDB Needham Worldwide, Inc., 763 N.Y.S.2d 546 (1st Dep't 2003) (agreement terminated under Sections 901 and 903 "even though defendant made payments after . . . termination date").

The New York Court of Appeals has stated that GOL 5-905 "was enacted solely for the protection of the tenant." J.H. Holding Co. v. Wooten, 291 N.Y. 427, 430 (1943). *See* Hain v. Zwitzer, 2008 WL 4949166, *1 (Rochester City Ct. 2008) (quoting Wooten; releasing tenant from self-renewing lease). In Mobil Oil Corp. v. Lione, 322 N.Y.S.2d 82 (Suffolk Cty. Dist. Ct. 1971), the landlord sought to terminate a self-renewing lease. The court found the landlord's notice of termination faulty and upheld the tenant's right to stay: "The [tenant], without proper

notice by the [landlord], has the sole option of deciding whether or not to renew . . . . The landlord places himself in the position, when he does not give notice under [Section 905], of abiding by the tenant's choice of what he wishes to do." 322 N.Y.S.2d at 86 (citing Wooten).

Because plaintiff did not terminate the contract, and did not remind defendants of their deadline for terminating the contract, defendants had the option to stay at the premises or terminate the contract at any time upon expiration of the initial term. Thus, defendants had the right to do as plaintiff alleges: to leave the premises at the very end of the initial term, without notifying plaintiff.

### E. The complaint should be dismissed under GOL 5-903 and 5-905 now, at the pleading stage.

As with any statute, interpretation of GOL 5-903 and 5-905 is a task for the court. *See* Sherman, *supra* (complaint dismissed on summary judgment based on court's interpretation of GOL 5-903). Thus, claims based on automatic renewal clauses have been dismissed at the pleading stage. *See* Guerrero v. West 23rd St. Realty, LLC, 846 N.Y.S.2d 41 (1st Dep't 2007) (dismissing complaint on basis of GOL 5-903). Because plaintiff's entire claim is based on the asserted automatic renewal of the contract, the complaint should be dismissed with prejudice.

### II. THE COMPLAINT SHOULD BE DISMISSED FOR RELYING ON AN INVALID CONTRACTUAL PENALTY CLAUSE.

Even if GOL 5-903 and 5-905 did not apply to this case, the complaint should nevertheless be dismissed for relying on an invalid contractual penalty clause.

The contract provides that in the event of early termination of internet services, the customer must pay a "cancellation fee equal to one hundred percent (100%) of the remaining monthly charges associated with the Internet Service for the un-expired portion of the applicable initial term or renewal term." (Internet Services Addendum, Art. 5(e)) Similarly, Article 5

9

provides that in the event of early termination of direct internet services, "all remaining monthly recurring charges for the months remaining in the term shall be accelerated and due prior to the termination date" (Art. 5(b)(ii)), and that "any early termination charges . . . shall be construed as liquidated damages and not a penalty." (Art. 5(d)) Despite the "liquidated damages" label, these provisions impose an unenforceable penalty.

Under New York law, a contractual clause labeled as "liquidated damages" is an unenforceable penalty unless (a) the foreseeable damages are difficult to estimate at the time of contracting, and (b) the agreed damages are reasonably proportionate to the foreseeable actual damages. United National Funding, LLC v. Volkmann, 2009 WL 4110772, *10 (N.Y. Cty. Commercial Div. 2009). The validity of a liquidated damages provision is a question of law. Id. "[T]he tendency in doubtful cases is to treat a liquidated damages clause as an unenforceable penalty irrespective of its characterization by the parties." Schiffman v. Deluxe Caterers of Shelter Rock, Inc., 474 N.Y.S.2d 87, 89 (2d Dep't 1984).

The "acceleration/cancellation fee" in plaintiff's contract (apparently, a standard-form contract) does not have either of the requisites of a valid liquidation damages clause. The foreseeable actual damages for breach were not difficult to estimate – for example, one estimate would be payments due minus revenue obtainable through reasonable efforts to mitigate damages. Likewise, because the "acceleration/cancellation fee" ignores plaintiff's duty to mitigate damages, the contractual damages are disproportionate to foreseeable actual damages.

New York law "imposes upon a party subjected to injury from the breach of a contract the active duty to make reasonable efforts to render the injury as light as possible." Losei Realty Corp. v. City of New York, 254 N.Y. 41, 47 (1930). *See also* Holy Properties Ltd. v. Kenneth Cole Productions, Inc., 87 N.Y.2d 130, 133 (1995) (general duty to mitigate damages for breach

10

of contract; real property leases are an exception). In light of this duty, if a possibility of mitigating damages is reasonably foreseeable, an acceleration/liquidated damages clause providing for full contract benefits is invalid. *See* Vanguard Leasing Corp. v. Dayanzadeh, 583 N.Y.S.2d 492, 493 (2d Dep't 1980) (car lease acceleration clause, "labeled by the parties as one for liquidated damages, is in reality a penalty"); AMF, Inc. v. Cattalani, 430 N.Y.S.2d 731, 733 (4th Dep't 1980) (charges for remainder of equipment lease term unrecoverable unless lessor made "reasonable efforts and expenditures" to "derive some benefit" from equipment); Schiffman, *supra* (deposit and lost profits from cancelled wedding unrecoverable without proof that caterer "lost a potential customer for the date in question by holding it"); Fairfield Lease Corp. v. 717 Pharmacy, Inc., 441 N.Y.S.2d 621, 623 (Bronx Cty. Civil Ct. 1981), *aff'd*, 460 N.Y.S.2d 1023 (1st Dep't 1983) (equipment lease acceleration clause invalid; "if the clause were a true liquidated damage provision, the parties would have considered rerental value"); Konner Rental Corp. v. Pedone, 269 N.Y.S.2d 463, 465 (Nassau Cty. Sup. Ct. 1966) ("liquidated damages" of 65% of remaining truck lease charges invalid despite "uncertainties of rerenting").

GOL 5-901 and 5-903 have apparently succeeded in keeping most acceleration clause cases involving personal property leases and service contracts out of the New York courts. Thus, already in 1981, the court in Fairfield remarked that "discussions of the issue [mitigation of damages] are not frequent in cases involving leases of personal property." 441 N.Y.S.2d at 624. However, in states that do not have statutes like Sections 901 and 903, acceleration clauses in automatically renewable service contracts continue to be litigated, and are routinely invalidated. *See, e.g.,* Data Foundry, Inc. v. Silicon Integration Initiative, Inc., 2010 WL 2336464 (Tex. App. 2010) (acceleration clause in automatically renewed internet-related services contract invalid); Industrial Maintenance Services v. UPS Supply Chain Solutions, Inc., 2008 WL 4826079

11

(W.D.N.C.) (acceleration clause in automatically renewed janitorial services contract invalid); Unifirst Corp. v. Rubino Bros., Inc., 2004 WL 2668794 (Conn. Super. 2004) (acceleration clause in automatically renewed uniform rental contract invalid). These cases suggest that even if GOL 5-903 did not exist, a New York court would be especially suspicious of an acceleration clause in an automatically renewable service contract.

Under New York law, the consequence of relying on an invalid liquidated damages clause is dismissal to the extent of liquidated damages. Volkmann, *supra*, at \*11 (portion of cause of action dismissed to "extent that the plaintiff seeks to recover under the Liquidated Damages provision"). Konner, *supra* ("insofar as the instant action seeks to recover damages on the basis of the liquidated damages provision, the action must be dismissed"). In this case, because the damages claim is based entirely on the invalid "cancellation/acceleration fee" clause, the complaint should be dismissed in its entirety. Dismissal should be with prejudice in light of plaintiff's previous pleading failures, discussed below.

### III. THE COMPLAINT SHOULD BE DISMISSED FOR REPEATED FAILURE TO PROPERLY ALLEGE SUBJECT-MATTER JURISDICTION.

**A. The prior lawsuit**

On January 29, 2010, plaintiff filed a complaint in this Court with the same substantive allegations as the current complaint, but naming only one of the defendants, Visual Trading Systems, LLC ("VTS"). (No. 10-CV-0709-LAK, Docket #1) On February 2, Judge Kaplan issued an order *sua sponte*, stating that the complaint's allegations of diversity jurisdiction did not properly identify the citizenship of the limited-liability company defendant, and that the complaint would be dismissed for lack of subject-matter jurisdiction if an amended complaint were not filed by February 9. (Id. #3) Judge Kaplan dismissed the complaint by order dated

February 22.  (Id. #4)  On February 23, plaintiff filed a second complaint (Id. #5), but did not move to vacate the order of dismissal.  It appears that no action was taken on the second complaint.

   B. **Filing of the current action**

On May 10, plaintiff filed the current action.  The only differences between the dismissed complaint and the current complaint are that this one (i) names Capital Market Services, LLC ("CMS") as a second defendant, (ii) alleges that VTS is a division, operating unit, or alter-ego of CMS, and (iii) states that both LLCs are organized under New York law.  (Cplt. ¶¶ 2-4)

On the Civil Cover Sheet filed with this complaint, under the question, "Has this or a similar case been previously filed in SDNY at any time?," plaintiff checked the box that says "No."  Similarly, plaintiff did not respond to the next question about the disposition of the previous case.  (Civil Cover Sheet, attachment no. 5 to affirmation supporting motion)

A party seeking to file an amended complaint after judgment must first have the judgment vacated or set aside.  Ruotolo v. City of New York, 514 F.3d 184, 191-92 (2d Cir. 2008).  Because plaintiff failed to request such relief from Judge Kaplan, but instead filed a new action, and also did not inform the Court of the connection to the dismissed action, the complaint should be dismissed.

Furthermore, plaintiff's current complaint does not correct the pleading defect that Judge Kaplan pointed out.  The complaint does not allege the citizenship of the members of the LLC defendants, as required.  Rather, plaintiff only alleges the LLCs' state of organization and principal place of business, which are irrelevant to diversity jurisdiction.  Scantek Medical, Inc. v. Sabella LLC, 2008 WL 2518619, *2 & n.1 (S.D.N.Y.).  Therefore, the complaint should be dismissed for failure to properly allege subject-matter jurisdiction.

## CONCLUSION

Because the complaint is based entirely on an unenforceable contract-renewal clause and an invalid liquidated damages clause, and because plaintiff failed in several ways to take advantage of opportunities to correct the prior complaint, the case should be dismissed with prejudice and with an award of fees and costs to defendants, as provided in the contract.

Respectfully submitted,

_____S/_____
Daniel J. Rothstein (DR 5440)
Attorney for Defendants
Law Office of Daniel J. Rothstein, P.C.
747 Third Avenue, 32nd Floor
New York, NY 10017
tel. 212-207-8700
fax 212-207-8710
djr@danielrothstein.com

August 11, 2010
(Filed electronically.)